**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**FARRAR W. HOWARD, III, and**
**KRISTEN HOWARD,**
**on behalf of themselves and all others**
**similarly situated,**

**Plaintiffs,**

**v.** **Civil Action No.** 3:26cv00923

**HOME DEPOT U.S.A., INC.,**

**Serve: Corporation Service Company**
**100 Shockoe Slip, Fl. 2**
**Richmond, Virginia 23219,**

**Defendant.**

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiffs, Farrar W. Howard, III and Kristen Howard (the "Howards" or "Plaintiffs"), by counsel, on behalf of themselves and all similarly situated individuals, and for their Class Action Complaint against Defendant Home Depot U.S.A., Inc., allege as follows:

## PRELIMINARY STATEMENT

1. This is a consumer class action brought for willful violations of the Virginia Consumer Protection Act, VA. CODE ANN. §§ 59.1-196–207 ("VCPA"), against Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant").

2. Plaintiffs allege class claims against Home Depot pursuant to § 59.1-200(A)(1), (2), (3), and (14) of the VCPA as to themselves and the putative Class Members for its: (1) misrepresenting goods or services as those of another; (2) misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) misrepresenting the affiliation, connection, or association of the supplier, or of the goods or services, with another; and (4) using other deception,

fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

3. Home Depot violated the VCPA upon the Plaintiffs' purchase of a refrigerator and its installation for their home. The Howards contracted with Home Depot to deliver and install the refrigerator, as typically occurs with such purchases. Home Depot, however, never revealed to the Plaintiffs that Home Depot itself — the national retailer with whom they dealt and whose name appeared on every receipt, email, and delivery record — would have no involvement in or supervision of the installation, and that the work would instead be performed by anonymous crews dispatched by a separate delivery company and its network of labor contractors and subcontracted installers (collectively, the "Non-Home Depot Installers").

4. Home Depot's own fine print concedes what its point-of-sale representations conceal: its "delivery agents are not licensed carpenters, plumbers or electricians" and are not authorized to perform plumbing work. Home Depot nowhere discloses this at the point of sale, where it sells the delivery and "installation" of major appliances — including the connection of refrigerator water lines — as a Home Depot service.

5. In place of Home Depot, these undisclosed, uncredentialed, and unsupervised installers delivered and installed the Howards' refrigerator — and did so in violation of Home Depot's own installation requirements. Although Home Depot's uniform policy requires a new water-supply line for every new refrigerator hookup, and although the Howards purchased the new line Home Depot required and offered it to the installers, the installers refused it, connected the refrigerator to the home's existing quarter-inch copper line, and left a slowly leaking connection behind the appliance. The leak ran undetected for months, destroying the Howards' hardwood flooring, cabinetry, subfloor, floor joists, and crawlspace.

6. When the Plaintiffs then contacted Home Depot and sought its repair of the harm its installation caused, they collided with the second half of Home Depot's scheme. Home Depot's delivery records had falsely coded the completed installation as a mere "drop off," and Home Depot's third-party claims administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), denied the Howards' claim on the ground that there was supposedly no evidence that Home Depot installed the refrigerator — even as Home Depot's own internal records admitted: "our guys hooked it up to a copper line."

7. Home Depot then washed its hands. It told the Howards that "the Home Depot stands by Sedgwick's claim decision," offered a $400.72 appliance "markdown" against more than $90,000 in damage to their home, and directed them to take their grievance to Sedgwick.

8. On information and belief, this was not an isolated failure but the operation of a uniform business practice: Home Depot sells appliance "delivery and installation" without disclosing that unlicensed third-party crews will perform the work, represents the services as Home Depot's own, and — when an installation damages a customer's home — disclaims responsibility and relegates the customer to a claim denial issued by Sedgwick or to chasing the anonymous installer.

9. Beyond their VCPA claim, for which they seek statutory and treble damages, the Plaintiffs also bring this action under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"). The installation of the Plaintiffs' refrigerator was made incidental to the purchase of the appliance. The failure to deliver the installed refrigerator in accordance with its ordinary expected condition and use violated multiple implied and express warranties. Plaintiffs' actual damages exceed $50,000 for such violation and they bring their individual claims pursuant to 15 U.S.C. § 2310(d), as well as for fraud and breach of contract.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action because it arises between the Plaintiffs, citizens of Virginia, and Home Depot, a citizen of Delaware and Georgia. *See* 28 U.S.C. § 1332(a). There is more than $75,000 in controversy, as the Plaintiffs suffered more than $90,000 in property damage and related loss, and the VCPA permits awards of three times actual damages for willful violations. VA. CODE ANN. § 59.1-204(A).

11. Plaintiffs also bring this action with jurisdiction under the MMWA pursuant to 15 U.S.C. § 2310(d)(1)(B) and (d)(3), as they have suffered actual damages greater than $50,000.

12. Plaintiffs bring their VCPA claim on behalf of a putative class as defined below. This Court has jurisdiction over such action pursuant to 28 U.S.C. § 1332(d)(2) as: (1) upon information and belief, there are at least 10,000 consumers in Virginia who have purchased products and connected installation of such products from Home Depot during the class period; (2) those consumer Class Members all may assert their VCPA claims for statutory damages of $1,000 each (with collective damages exceeding $5,000,000); and (3) those Virginians are all diverse as to Home Depot, a Delaware corporation with its principal place of business in Georgia.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Home Depot is registered to do business and located in this District and Division and because a substantial part of the events giving rise to the claims occurred here: the sale was made through Home Depot's store no. 4624 in Mechanicsville, Hanover County, Virginia; the delivery and installation were dispatched from a delivery hub in Ashland, Virginia; and the defective installation and resulting destruction of the Plaintiffs' home occurred in King and Queen County, Virginia — all within the Richmond Division.

## PARTIES

14. Plaintiff Farrar W. Howard, III is a natural person and citizen of Virginia residing in King and Queen County, Virginia. He is a "consumer" protected by the VCPA and the purchaser of record of the refrigerator and installation services at issue.

15. Plaintiff Kristen Howard is a natural person and citizen of Virginia residing in King and Queen County, Virginia. She is Mr. Howard's wife and, with him, an owner and/or occupant of the damaged home. She was present for and oversaw the installation, and she thereafter pursued the Howards' claim through months of calls and correspondence with Home Depot and Sedgwick. She is a consumer protected by the VCPA and a person who suffered loss as a result of the violations alleged herein.

16. Defendant Home Depot U.S.A., Inc. is a foreign corporation organized under the laws of Delaware with its principal place of business at 2455 Paces Ferry Road SE, Atlanta, Georgia. It is registered to do business in Virginia and operates dozens of retail stores throughout the Commonwealth, including store no. 4624 at 7251 Bell Creek Road, Mechanicsville, Virginia. At all times relevant to this Complaint, Home Depot was in the business of providing goods and services to consumers and was a "supplier" as defined by VA. CODE ANN. § 59.1-198, and the Plaintiffs' purchase from Home Depot was for their personal, family, and household use.

17. Two non-parties are relevant to the allegations below. First, on information and belief, Home Depot's appliance deliveries and installations in this region are dispatched from "market delivery operations" ("MDOs"), including "MDO 5935" in Ashland, Virginia, a facility operated by Temco Logistics (the trade name of Home Express Delivery Service, LLC), a delivery company Home Depot acquired in 2023, which in turn staffs deliveries and installations through labor contractors and subcontracted crews. Second, Sedgwick Claims Management Services, Inc. is Home Depot's third-party claims administrator; as Sedgwick's own correspondence to the

Howards states, “Sedgwick manages claims on behalf of The Home Depot, Inc.” On information and belief, Home Depot is self-insured for such claims, and Sedgwick adjusts and pays them, if at all, from Home Depot’s own funds and subject to Home Depot’s direction and financial interest.

## FACTS

**A. The purchase and Home Depot’s promised installation.**

18. On June 11, 2025, the Howards purchased from Home Depot, through order no. WJ85602294 placed with Home Depot’s store no. 4624, a GE 21.9 cubic foot counter-depth French door refrigerator for their home at 251 Osprey Lane, Mattaponi, Virginia.

19. The order included Home Depot’s “Home Delivery” service for $39.00, “Haul Away Your Old Appliance” for $50.00, and — because Home Depot’s uniform policy requires that a new water-supply line be purchased at the point of sale for every new refrigerator hookup — a 12-foot “Upgraded Braided Water Line.” The order totaled $1,310.38.

20. This purchase was a “consumer transaction” as defined and governed by the VCPA, VA. CODE ANN. § 59.1-198, and a sale of goods governed by Article 2 of the Uniform Commercial Code as adopted in Virginia, VA. CODE ANN. Title 8.2.

21. At the time of sale, Home Depot represented — and the Howards understood — that Home Depot would deliver the refrigerator and install it, including by connecting its water supply. Home Depot’s appliance-delivery materials promise consumers that its delivery team will “uncrate, set in place, level and connect your appliance” and “test the appliance for functionality.”

22. Home Depot’s own uniform delivery documents further instruct that a new connection must be used: “You have purchased a new water line connection kit – we cannot use existing connection parts for new appliance hookups.”

23. Home Depot failed to notify the Plaintiffs at the time of purchase that it does not itself provide delivery of goods like the refrigerator they purchased or services like the installation

for which they contracted, but that such services are actually provided through separate entities — on information and belief, Temco Logistics/Home Express Delivery Service, LLC and whatever labor contractors, carriers, or subcontractor crews it or Home Depot then elects to engage.

24. Home Depot in fact failed to notify the Plaintiffs that any person or entity other than Home Depot would have any role in the delivery or installation at all.

25. Home Depot likewise failed to disclose that the crews who would perform the "installation" it sold hold no plumbing or trade credentials of any kind. Home Depot's own delivery checklists — never presented at the point of sale — concede that its "[d]elivery agents are not licensed carpenters, plumbers or electricians."

26. Home Depot misrepresented the goods and services provided by the Non-Home Depot Installers as its own. Home Depot misrepresented that the source of the delivery and installation services was Home Depot, when that was not true. Home Depot also misrepresented its affiliation, connection, and association with the Non-Home Depot Installers by failing to disclose them and instead informing the Plaintiffs that Home Depot would be handling the delivery and installation, when that was not true.

27. These misrepresentations were material. Home Depot is a large, national, and generally respected retail business with employees, locations easily accessible to consumers, and the resources necessary to honor its obligations and remedy its mistakes. In contrast, the Non-Home Depot Installers are not any of these things. They are unnamed crews — in the Howards' case, workers whose identities Home Depot has never disclosed — without any known or disclosed business location, telephone number, address, license, or insurance.

**B. The undisclosed installers' defective installation.**

28. On the morning of June 16, 2025, Home Depot emailed the Howards: "Get ready, Farrar! Your appliance(s) arrive today." The email stated that the appliance would "be delivered

between 1:00pm - 5:00pm by one of our local delivery partners" and instructed the Howards to "[h]ave an adult present to sign and advise on the installation." It did not identify any "partner," disclose that the "partner" rather than Home Depot would perform the installation, or disclose that the crew would be unlicensed and unsupervised.

29. That afternoon, a two-man crew dispatched from "MDO 5935" — the Ashland, Virginia market delivery operation — delivered the refrigerator and installed it. On information and belief, the crew members were employees of neither Home Depot nor Temco Logistics, but of an unidentified labor contractor or subcontractor.

30. Ms. Howard was present. She showed the installers the water shut-off valve beneath the kitchen sink and offered them the new 12-foot braided water line the Howards had purchased for the installation at Home Depot's direction. The men who showed up for delivery and installation were non-English speaking with an unmarked box truck that left no paperwork.

31. The installers declined the new line, saying only "no need." They instead connected the refrigerator to the home's existing quarter-inch copper ice-maker line and left the new braided line, unused, on the counter. The Howards later returned the unused line to Home Depot, which refunded its $19.24 price on July 3, 2025.

32. The installers' use of the existing copper line violated Home Depot's own uniform installation requirements, which mandate a new connection kit for every hookup, prohibit reuse of existing connection parts, and prohibit delivery crews from performing plumbing work.

33. At 1:52 p.m. that day, Home Depot emailed the Howards again: "Your delivery is done, Farrar! Enjoy your appliance(s). Our delivery partner delivered and installed your appliance(s) today."

34. Home Depot's "Proof Of Delivery" record for the order contains photographs of the location of the refrigerator installation and copper water line, together with a purported "Customer Signature" that is not the signature of either Plaintiff.

35. Also on June 16, 2025, Home Depot's internal order record was coded with the note: "FSA - drop off only- cx has copper line." That coding was false. The crew did not "drop off" the refrigerator; it installed the refrigerator, connecting it to the copper line — exactly as Home Depot's own "delivered and installed" confirmation email, and its later internal admissions reflect.

36. On information and belief, coding a completed hookup as a "drop off" when the installation deviates from Home Depot's written water-line policy is a uniform practice of Home Depot and its delivery network, and it functions to permit Home Depot to deny that any installation occurred if and when damage later surfaces.

**C. The leak and the destruction of the Howards' kitchen.**

37. The connection the installers made between the copper line and the refrigerator's water inlet developed a slow leak. The leak was behind and beneath the refrigerator, invisible to the Howards.

38. For approximately four months, water seeped beneath the Howards' hardwood flooring and into their cabinetry, kitchen island, subfloor, floor joists, and crawlspace, affecting approximately 300 square feet of the home, including the eat-in kitchen, dinette, and living room.

39. On or about October 18, 2025, the Howards discovered the damage and immediately engaged a professional mitigation company, Lightspeed Restoration, which documented the loss, removed saturated materials, treated the affected areas, and dried the structure.

40. On October 25, 2025, a licensed plumber repaired the leak and documented its cause: "Repair leak on 1/4 inch water line to refrigerator. 1/4 inch compression fitting developed a slow leak that went unnoticed. The water damage seeped into cabinets, subfloor and crawl space."

41. The remediation required the demolition of the Howards' kitchen: removal of their cabinetry, granite countertops, hardwood flooring, quarter-round, subfloor, and damaged floor joists, and the drying and treatment of the crawlspace. The Howards have already paid or incurred more than $27,800 for mitigation, demolition, plumbing, and structural repairs, including flooring replacement ($11,557.50), subfloor and joist replacement ($5,437.50), demolition and mitigation ($10,645.60), and trim ($200.00).

42. The rebuild of the kitchen — cabinetry, countertops, backsplash, electrical, plumbing, drywall, painting, and trim — is estimated at an additional $65,898.35.

43. All told, the damage exceeds $90,000, exclusive of the Plaintiffs' loss of use: for months, the Howards and their children have lived without a functioning kitchen — no sink, no dishwasher, and no ability to cook at home.

**D. Home Depot's runaround: "drop off" coding, Sedgwick denials, and a closed ticket.**

44. On December 16, 2025, Ms. Howard contacted Home Depot regarding the leaking refrigerator installation and the damage it caused, and a Home Depot representative filed a property-damage claim on the Howards' behalf.

45. Home Depot did not investigate or repair anything. Instead, it routed the Howards to Sedgwick, which opened claim no. 20260157801 under Sedgwick file no. 20251247588.

46. Over the following three months, Ms. Howard contacted Home Depot again and again seeking the repair of her home. Home Depot's own internal records document more than two dozen calls and contacts; serial transfers among store, online, "major appliance," "resolution,"

and "specialty ops" departments; agents telling her that no department could help her; and repeated unfulfilled promises of callbacks within "24-48 business hours."

47. On January 7, 2026, a Home Depot "resolution" specialist submitted the Sedgwick claim "to Leadership due to property damage." On January 9, 2026, a Home Depot customer-service representative reviewed the order and delivery records with Ms. Howard and, on January 9, 2026, Home Depot's representative "Milo" told her "we take your word for it that they installed the fridge" and assured her that Sedgwick would make it right because Home Depot's records showed a completed delivery and installation.

48. On January 13, 2026, another Home Depot agent reviewed the order, confirmed the refund of the unused water line, "noted that the delivery company should have a record of the installation and pictures of the water line," and "added a note to the Sedgwick claim indicating that the refrigerator was installed during delivery."

49. On January 15, 2026, an independent adjuster retained through Sedgwick inspected the home; his report was submitted on January 19, 2026.

50. Sedgwick nevertheless denied the Howards' claim — multiple times — asserting that there was no evidence that Home Depot installed the refrigerator, because Home Depot's delivery records coded the installation as a "drop off."

51. Home Depot's own internal escalation note of February 18, 2026 admits the truth: "Sedgwick is denying her claim for property damage saying we did not install her fridge (our guys hooked it up to a copper line)[.] We do not do this but the MDO has this listed as a drop off instead of the fact they did install to those lines."

52. Rather than repair the damage its installation caused, Home Depot that same day offered the Howards a 25% "markdown" on the refrigerator — a $400.72 refund — telling Ms.

Howard that "25% is our max on appliances," and resubmitted the claim to Sedgwick as claim no. 20260273997.

53. On March 4 and 5, 2026, Home Depot delivered its final word. Its "Specialty Ops Customer Solutions" representative told Ms. Howard that "the Home Depot stands by Sedgwick's claim decision," advised that any questions should be directed to Sedgwick, and closed the ticket.

54. To date, neither Home Depot, nor Sedgwick, nor Temco Logistics, nor any installer has paid for the destruction of the Howards' kitchen. The Howards have borne the entire cost themselves.

55. Home Depot's conduct in the claims process shows precisely why it violated the VCPA by failing to disclose its contractors and the true nature of the delivery and installation of the refrigerator the Plaintiffs purchased. The Plaintiffs rightly expected the party with whom they contracted — Home Depot — to accomplish the delivery and installation. They had no reason to think otherwise.

56. Home Depot deceived the Plaintiffs by having someone else perform the delivery and installation without their knowledge or agreement, and then used that deception against the Plaintiffs when they sought recourse for the damage to their home — responding, effectively: "we didn't install your refrigerator, someone else did; and our records say no one installed it at all. Go get your money from Sedgwick."

57. By representing that it would conduct the delivery and installation when it knew otherwise, Home Depot engaged in a deceptive practice in order to evade liability for the Plaintiffs' damages.

**E. Home Depot's practices are uniform.**

58. On information and belief, the practices alleged above are uniform. Home Depot has publicly stated that 100% of its appliance delivery volume is managed through its market

delivery operations, and those operations are staffed and performed by its acquired delivery company, third-party carriers, and their labor contractors and subcontracted crews — not by Home Depot store personnel with whom consumers deal at the point of sale.

59. Home Depot's point-of-sale process — in-store and online — uniformly omits any disclosure of these facts. Its receipts, order confirmations, and delivery emails uniformly speak of Home Depot's own delivery and installation, at most referring generically to unnamed "local delivery partners" while promising that the appliance will be "installed."

60. On information and belief, Home Depot's response when its installations damage customers' homes is likewise uniform: Home Depot performs no investigation and makes no repair; it routes the customer to Sedgwick; Sedgwick — acting on Home Depot's behalf and paying, if at all, with Home Depot's money — delays, lowballs, or denies the claim, including by relying on Home Depot's own delivery coding; and Home Depot then disclaims any further responsibility, telling the customer the matter is between the customer and Sedgwick. Consumers across the country have publicly reported this same treatment following property damage caused by Home Depot appliance deliveries and installations.

61. When the Plaintiffs purchased the refrigerator and incidental installation, it was sold with multiple warranties, including by example only, the implied warranties of merchantability and fitness for ordinary purpose. VA. CODE ANN. §§ 8.2-314, 8.2-315.

62. By failing to deliver the refrigerator installed as represented and refusing to make the repairs as otherwise obligated, Home Depot breached these warranties.

## CLASS ACTION ALLEGATIONS

63. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring their VCPA claim for themselves and on behalf of a class initially defined as follows:

> All natural persons who, on or after the date two years before the filing of this Action, purchased at or from a Home Depot store located in Virginia, or from Home Depot's website for delivery to a Virginia residential address, the delivery and installation of a major appliance, and who were not notified prior to the sale that such installation was not going to be performed by Home Depot.

64. **Numerosity. FED. R. CIV. P. 23(a)(1).** Upon information and belief, the Class Members are so numerous that joinder of all is impractical. On information and belief, at least 10,000 such installation sales have occurred in Virginia within the class period. The names and addresses of the Class Members are identifiable through the internal business records maintained by Home Depot — including the same order-management records Home Depot maintained for the Howards' purchase — and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

65. **Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the putative Class and predominate over any questions affecting only individual Class Members. The principal common issues are: (a) whether Home Depot notified purchasers that deliveries and installations of appliances are performed by persons other than Home Depot; (b) whether Home Depot misrepresented the nature and source of the services it would provide to purchasers; (c) whether such misrepresentations and omissions were material and posed a risk of harm; (d) whether Home Depot's violations were willful; and (e) the proper measure of statutory damages.

66. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative Class Member. Plaintiffs, like every putative Class Member, allege the same violations of the VCPA arising from Home Depot's uniform point-of-sale procedures and uniform failure to disclose its contracts with third-party delivery and installation providers. Plaintiffs are entitled to relief under the same causes of action as the other members of the putative Class.

67. **Adequacy of Representation. FED. R. CIV. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this action.

68. **Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit, because the entire theory of Home Depot's conduct is concealment. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof.

69. Class certification is also appropriate under FED. R. CIV. P. 23(b)(2) because Home Depot has acted on grounds generally applicable to the Class, making equitable and injunctive relief — including an order requiring point-of-sale disclosure of the true providers of

its delivery and installation services — appropriate with respect to the Plaintiffs and the Class Members.

**CLAIMS FOR RELIEF**

**COUNT ONE – VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT (VA. CODE ANN. § 59.1-196, *et seq.*)**

**Plaintiffs and the Putative Class**

70. Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

71. Home Depot entered into a "consumer transaction" as defined in VA. CODE ANN. § 59.1-198 with the Plaintiffs and each putative Class Member.

72. Home Depot was a "supplier" of consumer goods and services as defined in VA. CODE ANN. § 59.1-198 as to the Plaintiffs and each putative Class Member.

73. In the course of its business, Home Depot willfully failed to disclose and actively concealed the arrangements it had with third-party providers of delivery and installation services, the identity and lack of credentials of the persons who would perform the installations, and its practice of disclaiming responsibility for their work. Accordingly, Home Depot engaged in acts and practices violating the VCPA.

74. Home Depot violated the VCPA as to the Plaintiffs and the members of the putative Class in multiple ways, including by example only and without limitation: (1) misrepresenting goods or services as those of another, in violation of § 59.1-200(A)(1); (2) misrepresenting the source, sponsorship, approval, or certification of goods or services, in violation of § 59.1-200(A)(2); (3) misrepresenting the affiliation, connection, or association of the supplier, or of the goods or services, with another, in violation of § 59.1-200(A)(3); and (4) using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, in violation of § 59.1-200(A)(14).

75. Home Depot's actions as set forth above occurred in the conduct of trade or commerce.

76. Home Depot's conduct proximately caused injuries to the Plaintiffs and the other Class Members.

77. Plaintiffs and each putative Class Member necessarily relied upon Home Depot's misrepresentations and omissions, which were uniform at the point of sale.

78. Plaintiffs and the other Class Members were injured as a result of Home Depot's conduct in that they were not notified that Home Depot was not involved in, connected to, overseeing, or responsible for installations to be made in fact by Non-Home Depot Installers, as an installation by an undisclosed, unlicensed, and unsupervised third party was less valuable and of greater uncertainty and risk than an installation made or supervised by Home Depot itself — a risk realized in the Plaintiffs' own destroyed kitchen.

79. Home Depot's violations of the VCPA were carried out with reckless disregard and intent, and were thus willful, rendering Home Depot liable pursuant to VA. CODE ANN. § 59.1-204(A) and entitling each Class Member to $1,000 in statutory damages, and entitling the Plaintiffs to treble their actual damages.

80. In the alternative to the allegation that Home Depot's violations were willful, Home Depot is liable pursuant to § 59.1-204(A), entitling each Class Member to $500 in statutory damages.

81. Plaintiffs and the putative Class Members are entitled to recover their costs and attorneys' fees from Home Depot pursuant to VA. CODE ANN. § 59.1-204(B) in an amount to be determined by the Court.

**COUNT TWO – FRAUD**
**Plaintiffs Individually**

82. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

83. The misrepresentations and omissions alleged above — including Home Depot's representations that it would deliver and install the refrigerator, its written confirmation that its "delivery partner delivered and installed" the appliance, and its simultaneous false internal coding of the installation as a "drop off" — also constituted actual and constructive fraud by Home Depot against the Plaintiffs.

84. As alleged above, Plaintiffs reasonably relied upon such misrepresentations in deciding whether to purchase the refrigerator and connected installation from Home Depot, in permitting the crew Home Depot dispatched into their home, and in pursuing repair through Home Depot's designated claims process rather than immediately pursuing other remedies.

85. Home Depot's misrepresentations and the conduct allowing them were deliberate and intentional, made such as to constitute actual malice.

86. Plaintiffs suffered actual economic loss and damages in the loss of property and loss of use in excess of $90,000.

87. Plaintiffs are entitled to, and Home Depot is responsible to pay, punitive damages.

**COUNT THREE – BREACH OF CONTRACT**
**Plaintiffs Individually**

88. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

89. Plaintiffs paid Home Depot for a refrigerator and for the delivery and installation of that refrigerator. Home Depot failed to effectively accomplish the delivery and installation, including by failing to install the refrigerator in a good and workmanlike manner and in accordance with its own installation requirements.

90. Home Depot breached the contract between the Plaintiffs and Home Depot to sell, deliver, and properly install the refrigerator. Home Depot failed in its part of the bargain, and its misrepresentations and omissions alleged herein caused the Plaintiffs to purchase such delivery and installation through Home Depot.

91. As a result of Home Depot's breach, Plaintiffs suffered actual economic damages in the loss of property and loss of use in excess of $90,000.

**COUNT FOUR – VIOLATION OF THE FEDERAL MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *et seq.*)**
**<u>Plaintiffs Individually</u>**

92. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

93. The refrigerator is a "consumer product" as defined by 15 U.S.C. § 2301(1), and Home Depot is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) and (5).

94. The installation of the Plaintiffs' refrigerator was made incidental to the purchase of the appliance.

95. The refrigerator and its installation were sold subject to implied warranties arising under state law, 15 U.S.C. § 2301(7), including the implied warranty of merchantability, VA. CODE ANN. § 8.2-314, and the implied warranty of fitness for a particular purpose, VA. CODE ANN. § 8.2-315, as well as express warranties.

96. The failure to deliver the installed refrigerator in accordance with its ordinary expected condition and use — properly and safely connected to a water supply — violated multiple implied and express warranties.

97. Home Depot failed and refused to remedy its breach after being afforded a reasonable opportunity — indeed, months of opportunities — to cure.

98. Home Depot is liable to the Plaintiffs for breach of these warranties as well as pursuant to 15 U.S.C. § 2310(d).

99. Plaintiffs suffered actual damages in the loss of property and loss of use in excess of $50,000.

100. Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recovery of their costs and attorneys' fees from Home Depot in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Farrar W. Howard, III and Kristen Howard request that the Court enter judgment on behalf of themselves and the Class they seek to represent against Defendant Home Depot U.S.A., Inc. for: (1) certification for this matter to proceed as a class action under Rule 23, with Plaintiffs and their counsel appointed to represent the Class; (2) statutory, actual, treble, and punitive damages, as pleaded herein; (3) equitable and injunctive relief, including an order requiring Home Depot to disclose at the point of sale the true providers of its delivery and installation services; (4) prejudgment and postjudgment interest; (5) attorneys' fees, litigation expenses, and costs of suit; and (6) such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
FARRAR W. HOWARD, III and KRISTEN HOWARD, individually and on behalf of all others similarly situated,

By: /s/ Leonard A. Bennett

Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com

*Counsel for Plaintiffs*